[Civ. No. 34087. Second Dist., Div. Four. Apr. 15, 1970.]

EDWARD KOZLOWSKY, Plaintiff and Appellant, v.
WESTMINSTER NATIONAL BANK et al.,
Defendants and Respondents.

Brock & Rykoff and Richard L. Rykoff for Plaintiff and Appellant.

Wenke, Marx, Kemble & Burge, Gary L. Taylor, John E. Sisson and John E. Sisson, Jr., for Defendants and Respondents.

## Opinion

FILES, P. J.—This is an action for damages allegedly sustained by plaintiff as a result of his discharge as president of defendant Westminster National Bank. Other defendants include Commercial National Bank, into which Westminster merged subsequent to the acts complained of, and two individuals, Ronald Caspers and Harry Klassman.[1] The superior court sus-

---

[1] Other parties defendant were dismissed when their demurrers to the fourth amended complaint were sustained without leave. No appeal was taken from that order.

tained general demurrers to the fifth amended complaint without leave to amend, and dismissed the action. Plaintiff is appealing from that order of dismissal.

### Action on the Contract

The first count in the complaint alleges in substance these facts: Plaintiff and defendant Westminster National Bank (hereinafter "the Bank") entered into a written contract whereby plaintiff was employed to serve as its president for a term of one year commencing September 1, 1966. Plaintiff performed his duties under this contract until November 14, 1966, when the Bank wrongfully discharged him and prevented any further performance, whereby plaintiff has been damaged.

The Bank's defense to this cause of action is based upon a statute applicable only to national banks. ■ Although the complaint shows that the defendant has a name using the word "National," a name which may lawfully be used only by a banking association chartered under federal law (see 12 U.S.C. § 22; 18 U.S.C. § 709), the complaint alleges that the defendant Bank "is a California corporation." ■ To avoid any dispute over a matter which could not be the subject of any bona fide controversy, this court, prior to oral argument, notified the parties as follows: "The parties are hereby notified that the court proposes to take judicial notice of the certificate of authority issued by the United States Comptroller of the Currency to Westminster National Bank (see Evid. Code, §§ 451, subd. (b), 452, subd. (b)) and of the fact of nonexistence of any California corporation authorized to do a banking business under that name (see Evid. Code, § 452, subd. (g)).

"Any objections to such judicial notice shall be filed with this court in writing on or before January 5, 1970."

No objection having been made, we deem it established by judicial notice that the Bank was at all times material a national banking association.

12 United States Code section 24 provides that a national banking association shall have the power: "To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places."

This provision that the board of directors may dismiss officers "at pleasure," unlike some verbally similar statutes, has been construed as overriding any contract to employ for a fixed term. ■ By virtue of this statute the board may dismiss an officer without liability for breach of the

agreement to employ. (*Cox* v. *First Nat. Bank* (1935) 10 Cal.App.2d 302, 305 [52 P.2d 524]; see *In re Paramount Publix Corp.* (2d Cir. 1937) 90 F.2d 441, 443 [111 A.L.R. 889].)

Because of this statute plaintiff cannot state a cause of action for breach of his contract of employment. The demurrer to the first count was properly sustained.

### Action for Deceit

The second count alleges in substance these additional facts: In August 1966 defendants Klassman and Caspers represented to plaintiff that Klassman had acquired the controlling interest in the Bank by purchasing the stock theretofore owned by Caspers.

It is further alleged that this representation was false, and known by said defendants to be false, and that they intended to deceive.

Plaintiff alleges the fact to be that Caspers at all times owned the controlling stock in the Bank; the defendants intended plaintiff's employment to be contingent upon Klassman's acquiring the control stock; and Caspers did not intend to retain plaintiff as president unless Klassman acquired control.

Plaintiff believed and relied upon defendants' representation, and he left his former employment because he believed that his position as president would be secure and stable employment with Klassman's group in control of the Bank. His subsequent discharge by the Caspers group left him unemployed, isolated from the banking community and unable to secure suitable employment for some time.

The pleading sets forth all of the elements of an action for deceit. (Civ. Code, §§ 1709, 1710; see 2 Witkin, Cal. Procedure (1954) Pleading, § 348, p. 1326.)

Defendants argue that the alleged misrepresentation was of no consequence because plaintiff's employment was terminable at any time regardless of whether Klassman or Caspers controlled the voting stock. This argument entirely ignores the significance of the representation upon which plaintiff relied. To him it was not a matter of indifference who controlled the corporation. A person contemplating the presidency of a bank may anticipate that he can enjoy a long and harmonious relationship with a particular group of stockholders, but not with some other group. Plaintiff was willing to take the risk of leaving his former position and accepting the presidency of a bank controlled by the Klassman group, who had offered him the position. Instead, plaintiff found himself under the control of a man who had never wanted him. Plaintiff alleges that the representation that

Klassman had already acquired control was the material fact that induced him to change his position. He is entitled to an opportunity to prove it at a trial.

Klassman and Caspers are the defendants who are alleged to have made the false representations. Their demurrers to the second cause of action should have been overruled.

### Interfering With the Contractual Relationship

The third cause of action alleges that defendant Caspers "intentionally, wantonly, maliciously and without justification" caused the Bank to discharge plaintiff. This count incorporates by reference portions of the other counts, including the allegation that Caspers at all times owned and controlled a majority of the capital stock of the Bank and thereby controlled the Bank's actions.

▄ Unjustifiable interference with contractual relations is an actionable tort. This is so even though the relationship is terminable at will, for "the fact that a contract is 'at the will of the parties, respectively does not make it one at the will of others.'" (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867].) Thus the fact that the Bank was privileged to discharge plaintiff at any time does not necessarily privilege a third party unjustifiably to induce the termination. "The tort of interference with an advantageous relationship, or with a contract, does not, however, disintegrate because it relates to a contract not written or an advantageous relation not articulated into a contract. The nature of the tort does not vary with the legal strength, or enforceability, of the relation disrupted. The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable." (*Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55, 57 [12 Cal.Rptr. 319].)

The remaining question to be determined is whether the alleged interference by Caspers was privileged by reason of his relationship to the Bank. The pleading alleges that Caspers owned and controlled a majority of the stock and thereby controlled the actions of defendant Bank. In addition, we note that an earlier pleading, the fourth amended complaint, alleges that Caspers was one of the directors of the Bank. ▄ If that is a fact which militates in Caspers' favor we must consider it because of the rule that a plaintiff may not improve his pleading by simply omitting, without explanation, the previously pleaded facts which render the pleading vulnerable. (See *Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377].)

The law recognizes that interference by a person having a financial interest in a matter must be evaluated differently from interference by a stranger. Section 769 of the Restatement of Torts states: "One who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor

(a)  does not employ improper means, and

(b)  acts to protect his interest from being prejudiced by the relation."

In *Collins* v. *Vickter Manor, Inc.* (1957) 47 Cal.2d 875 [306 P.2d 783] the complaint alleged that a corporation had breached a contract and that the defendants Engle and Vickter were two of the three officers, directors and "beneficial owners" of the corporation (which had not issued any stock) who had induced the breach. The Supreme Court said (at p. 883): "Plaintiffs have alleged the existence of a valid contract and an intentional unjustified interference with it by the individual defendants which caused defendant corporation to breach such contract to plaintiffs' damage. Whether or not Engle and Vickter were privileged to cause the corporation to discontinue its relations with plaintiffs, in the belief that such a course of action was in the best interests of the corporation, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved. Their right, if any, to such privilege, does not affirmatively appear on the face of the complaint."

The *Collins* case differs from the case at bench in that we do not have here a breach by the corporation. But that distinction is not decisive in determining whether the complaint states a cause of action. **(8)** As the *Speegle* and *Zimmerman* cases, *supra,* make clear, the tort is unjustified interference, whether a contract was breached or not. In either case the existence of privilege will depend upon other circumstances not disclosed on the face of the complaint.

Defendants have relied on what may conveniently be called the "manager's privilege" as justifying the action of Caspers, citing *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549 [36 Cal.Rptr. 880]. In that case the plaintiff alleged that he had been discharged maliciously by Jacuzzi, who was the general manager of the employer corporation. The appellate court held the complaint did not state a cause of action against Jacuzzi because (a) by reason of his confidential relationship as general manager, he was absolutely privileged, and (b) his act was no more than the act of the corporation. To the same effect see *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 38 [112 P.2d 631]; *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390, 393 [6 Cal.Rptr. 171]; *Lawless* v. *Brotherhood of Painters* (1956) 143 Cal.App.2d 474, 478 [300 P.2d 159].

That line of cases is not applicable to the facts alleged in the case at bench.  ■ ■  There is no allegation that Caspers is the general manager, or that he was otherwise authorized to act on behalf of the Bank in discharging its president. The federal statute (12 U.S.C. § 24, *supra*) empowers the board of directors, not the stockholders or an individual director, to dismiss an officer. We recognize that a majority stockholder has an important interest in the bank, justifying the expression of his views to the directors in matters affecting the bank's well being and his own as a stockholder. But the board of directors has responsibilities to persons other than the holder of the majority voting power. We cannot say, as a matter of law, that, by virtue of Caspers' position as majority stockholder and director, his interference with the business relationships of the Bank would be, under all conceivable circumstances, privileged.

In the case at bench the complaint does not allege any of the circumstances surrounding Caspers' action except to say that he acted "wantonly, maliciously and without justification." Such an allegation imports that defendant was not acting for the protection of his legitimate interests as a shareholder. (See *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 36 [112 P.2d 631].) Under the authorities reviewed above, we must conclude that the complaint states a cause of action, and that the question of defendant's privilege, as a stockholder, to seek plaintiff's discharge is a matter of defense.

The judgment in favor of the defendants Westminster National Bank and Commercial National Bank is affirmed. The judgment in favor of the defendants Klassman and Caspers is reversed, with instructions to overrule the demurrer of Klassman and Caspers to the second cause of action, and to overrule the demurrer of defendant Caspers to the third cause of action. Plaintiff only shall recover costs on appeal, and only from defendants Klassman and Caspers.

Kingsley, J., and Dunn, J., concurred.