FIRST NAT. BANK OF CAPITOL HILL v. MURRAY, Comptroller of the Currency.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1914.)

No. 3901.

1. BANKS AND BANKING (§ 234*)—NATIONAL BANKS—ORGANIZATION.

There is no right to organize and carry on the business of a national bank except on the conditions and in the manner prescribed by the acts of Congress regulating national banks (Rev. St. U. S. §§ 5134, 5190, 5191 [U. S. Comp. St. 1901, pp. 3454, 3486]; Act March 14, 1900, c. 41, 31 Stat. 48 [U. S. Comp. St. 1901, p. 3461]; Act May 1, 1886, c. 73, 24 Stat. 18 [U. S. Comp. St. 1901, p. 3462]; Act June 20, 1874, c. 343, 18 Stat. 123 [U. S. Comp. St. 1901, p. 3487]; Act March 3, 1887, c. 378, 24 Stat. 559 [U. S. Comp. St. 1901, p. 3490]), of which all must take notice.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 879–967, 970–1127; Dec. Dig. § 234.*]

2. BANKS AND BANKING (§ 235*)—NATIONAL BANKS—CONTROL—COMPTROLLER OF CURRENCY—ACTS—REVIEW.

Acts of the Comptroller of the currency within the National Banking Law conferring on him extensive powers of control and visitation over national banks are not subject to review by the courts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 879–887; Dec. Dig. § 235.*]

3. BANKS AND BANKING (§ 239*)—NATIONAL BANKS—ORGANIZATION—CHANGE OF LOCATION—CONDITIONS—COMPTROLLER OF CURRENCY.

The National Banking Acts require the Comptroller's certificate of organization of a national bank to state the place where its operations are to be carried on, and declares that its business shall be transacted at an office or banking house at the place specified. The reserve required of a national bank in a nonreserve locality is but 15 per cent. of its deposits, while 25 per cent. is required in a reserve city. A national bank in a city of more than 50,000 is required to have a capital of $200,000, but with the approval of the Secretary of the Treasury, it may, in a place of 3,000 inhabitants or less, have a capital of $25,000. Such banks may change their place of business from one place to another in the same state not more than 30 miles distant with the approval of the Comptroller, but such change is not valid until the Comptroller has issued his certificate of approval. *Held*, that where a national bank located in a suburb outside the corporate limits of Oklahoma City, having a population of not to exceed 3,000, was chartered with a capital of $25,000, and, after the suburb had been included in the city, the Comptroller refused permission to move the bank's place of business into the business section of the city unless it increased its capital to at least $200,000 and agreed to comply with the law regulating reserves in reserve cities, of which Oklahoma City was one, the alteration of the city's boundaries did not entitle the bank to so remove without compliance with the Comptroller's conditions, and, it having removed without fulfilling such conditions, the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Comptroller was entitled to maintain a suit for the forfeiture of its charter.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 893; Dec. Dig. § 239.*]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by Lawrence O. Murray, as Comptroller of the Currency, against the First National Bank of Capitol Hill. Judgment for plaintiff, and defendant brings error. Affirmed.

C. B. Stuart and A. C. Cruce, both of Oklahoma City, Okl., and W. I. Gilbert, of Los Angeles, Cal., for plaintiff in error.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (Homer N. Boardman, U. S. Atty., of Oklahoma City, Okl., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. The First National Bank of Capitol Hill, Okl., complains of a judgment in a suit by the Comptroller of the Currency forfeiting its charter because its directors knowingly violated the national banking laws. Section 5239, Rev. St. (3 U. S. Comp. St. 1901, p. 3515).

The bank was chartered in 1909 with a capital of $25,000 to do business in the village of Capitol Hill, Okl., a suburb outside the corporate limits of Oklahoma City. Less than a month afterwards, by proceedings under the local laws, the limits of the city were enlarged to include the village. Capitol Hill had not exceeding 3,000 inhabitants; Oklahoma City a population of over 50,000. Thereupon the bank, desiring to remove its banking house to the business section of Oklahoma City within its original limits, applied to the Comptroller for permission to do so. The Comptroller refused to permit the change unless the bank increased its capital stock to at least $200,000, changed its name to Capitol Hill National Bank of Oklahoma City, and agreed to comply with the provisions of the law relating to reserves to be held by banks in reserve cities, Oklahoma City being of that character. The bank having declined to comply with these conditions and having removed its place of business to the location desired, the Comptroller brought action with the result above indicated.

The statutes relating to the situation provide as follows: The organization certificate of a national banking association must state the name adopted which is subject to the approval of the Comptroller. It must also state the place where its operations of discount and deposit are to be carried on, and, its usual business shall be transacted at an office or banking house in the place so specified. The reserve required to be maintained by a national bank in a nonreserve locality is 15 per cent. of its deposits, while in a reserve city it is 25 per cent. Generally a national bank cannot be organized with a capital less than $100,000, nor, in a city of more than 50,000 inhabitants, with a capital less than

$200,000; but, with the approval of the Secretary of the Treasury, it may, in a place of 3,000 inhabitants or less, have a capital of at least $25,000, and in a place of not exceeding 6,000 inhabitants a capital not less than $50,000. A national bank may change its name or the "place" where its operations of discount and deposit are carried on to any other "place" in the same state not more than 30 miles distant with the approval of the Comptroller, but no such change shall be valid until the Comptroller has issued his certificate of approval. Sections 5134, 5190, Rev. St. (U. S. Comp. St. 1901, pp. 3454, 3486); Act of March 14, 1900, c. 41, 31 Stat. 48 (U. S. Comp. St. 1901, p. 3461); Act of May 1, 1886, c. 73, 24 Stat. 18 (U. S. Comp. St. 1901, p. 3462); section 5191, Rev. St. (U. S. Comp. St. 1901, p. 3486); Act June 20, 1874, c. 343, 18 Stat. 123 (U. S. Comp. St. 1901, p. 3487); Act March 3, 1887, c. 378, 24 Stat. 559 (U. S. Comp. St. 1901, p. 3490).

[1] There is no right to organize and carry on the business of a national bank except upon the conditions and in the way prescribed by the acts of Congress, of which all must take notice. McCormick v. Market Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817.

[2, 3] Extensive powers of control and visitation have been confided to the Comptroller of the Currency, and his acts within the law are not subject to review by the courts. The above provisions of the acts of Congress were intended to secure uniformity, efficiency, and safety in the conduct of the business authorized, and they should be construed in the light of that purpose. It is important that there should be a due proportion between the capitalization and the amount of deposits which may reasonably be expected in a village, town or city in which a bank is located. The value of a bank as an aid to business is affected by the amount it is authorized to lend its customers, and a national bank is prohibited from lending a single borrower more than a prescribed per cent. of its paid capital. The larger or more populous the locality, the greater, ordinarily, may be the needs of customers. Again, the maximum limit of the required surplus which makes for financial soundness of such institutions is also proportioned to the amount of capital. The reserve required by the law was 15 per cent. in Capitol Hill; it is 25 per cent. in Oklahoma City. We do not think the Capitol Hill Bank acquired, through the action of the local authorities, immunity from those requirements of the Comptroller which could have been imposed had it first sought a certificate of authority to do business in Oklahoma City. It insists upon carrying its meager equipment just acquired into the larger and more important field of action solely because of a local occurrence foreign to the spirit and intent of the federal statutes and in which no one charged with the administration of those statutes participated. If it should prevail in this, a way is pointed out by which interested persons advised of impending changes of municipal limits may evade the commands and prohibitions of Congress on a subject peculiarly within its exclusive jurisdiction. Had the bank sought authority at first to do business in the city on village conditions, it would certainly have been refused as contrary to law; it should not be indirectly secured in the way shown. Though the separate identity of the village has been by the action of

the local authorities and for local governmental purposes merged in that of the city, the city is not in the circumstances of this case the same "place" as the village within the meaning of the federal statutes and the action of the Comptroller sought and obtained by the organizers of the bank.

The judgment is affirmed.