## BUCHMAN v. BENSONHURST NAT. BANK OF BROOKLYN.
### No. 7867.

District Court, E. D. New York.
Feb. 5, 1936.

Abraham Lehman, of Brooklyn, N. Y., for plaintiff.

Watson, Kristeller & Swift, of New York City, for defendant.

MOSCOWITZ, District Judge.

This is a motion made by the plaintiff, the holder of one share of stock out of a total of 2,000 in the defendant bank, to enjoin the bank from moving from premises now occupied by it at No. 8514 Bay Parkway to a location directly opposite the said premises and known as No. 8517 Bay Parkway.

Upon the argument of the motion, plaintiff's attorney frankly admitted that this application was really made on behalf of the landlord of the premises presently occupied by the defendant bank. The granting of this application for an injunction, unless the bank later obtains a certificate of approval from the Comptroller of the Currency, would compel the bank to remain as an occupant of the said premises.

The bank was organized in 1927. The certificate of incorporation provides that the business of the institution be carried on in the county of Kings, city of New York. No specific address was designated in the certificate as the place for the transaction of the bank's business.

The statute governing the circumstances under which a national bank may change the location of its business reads as follows:

"*Chance of Name or Location.* Any national banking association may change its name or the place where its operations of discount and deposit are to be carried on, to any other place within the same State, not more than thirty miles distant with the approval of the Comptroller of the Currency, by the vote of shareholders owning two-thirds of the stock of such association. A duly authenticated notice of the vote and of the new name or location selected shall be sent to the office of the Comptroller of the Currency; but no change of name or·location shall be valid until the comptroller shall have issued his certificate of approval of the same. (May 1, 1886, c. 73, § 2, 24 Stat. 18.)" 12 U.S.C.A. § 30.

In answer to an inquiry by one of the officers of the defendant bank, the Comptroller of the Currency advised him that under the circumstances presented the bank could remove its offices without the approval of the Comptroller. I am quite in accord with the view expressed by the Comptroller of the Currency. If the certificate of incorporation limited the bank's place of business to a particular street address, then, before it could move its business to another location, it would be compelled to comply with the provisions of 12 U.S.C.A. § 30, and obtain a certificate of approval from the Comptroller of the Currency. However, the bank under its charter is authorized to do business within the county of Kings, city of New York, and I do not perceive that anything in the language of the aforesaid statute prevents it from moving its place of business to any other address within the county of Kings without the consent of the Comptroller of the Currency.

12 U.S.C.A. § 30, is one of many statutes enacted by Congress for the purpose of securing uniformity, efficiency, and safety in the conduct of. the business of national banks, and accordingly is to be construed in the light of that purpose. I think it clear that the language therein providing for the Comptroller's approval was inserted to the end that the Comptroller be afforded an opportunity to determine whether existing provisions of law require the imposition of certain conditions, and compliance therewith, before a bank is permitted to operate its business in a new locality.

Thus in the case of First Nat. Bank of Capitol Hill v. Murray, Comptroller of the Currency (C.C.A.) 212 F. 140, 142, where a national bank located in a suburb outside the corporate limits of Oklahoma City, having a population of 3,000, was chartered with a capital of $25,000, and, after the suburb had been included in the city, the Comptroller refused permission to the bank to move its place of business into the business section of the city unless it increased its capital stock, changed its name, and agreed to comply with the law regulating reserves in reserve cities, of which Oklahoma City was one, it was held that the alteration of the city's boundaries did not entitle the bank to so remove without the Comptroller's approval and without compliance with the conditions imposed. The court stated: "The reserve required by the law was 15 per cent. in Capitol Hill; it is 25 per cent. in Oklahoma City. We do not think the Capitol Hill Bank acquired, through the action of the local authorities, immunity from those requirements of the Comptroller which

could have been imposed had it first sought a certificate of authority to do business in Oklahoma City. It insists upon carrying its meager equipment just acquired into the larger and more important field of action solely because of a local occurrence foreign to the spirit and intent of the federal statutes and in which no one charged with the administration of those statutes participated. If it should prevail in this, a way is pointed out by which interested persons advised of impending changes of municipal limits may evade the commands and prohibitions of Congress on a subject peculiarly within its exclusive jurisdiction. Had the bank sought authority at first to do business in the city on village conditions, it would certainly have been refused as contrary to law; it should not be indirectly secured in the way shown. Though the separate identity of the village has been by the action of the local authorities and for local governmental purposes merged in that of the city, the city is not in the circumstances of this case the same 'place' as the village within the meaning of the federal statutes and the action of the Comptroller sought and obtained by the organizers of the bank."

The circumstances presented in the foregoing case were radically different from those herein presented, and it is quite plain, I think, that the reasons advanced by the court in support of its conclusion must lead to the result here that the Comptroller's certificate of approval need not be obtained by the defendant bank. It would manifestly be contrary to the spirit of the statute in question were the court to construe the words "any other place" to apply to the new location which the bank desires to move to in the instant case.

Motion denied.

Settle order on notice.